

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-2007

# Pollarine v. Boyer

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2786

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Pollarine v. Boyer" (2007). *2007 Decisions.* Paper 1260.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1260

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2786
_____

PHILLIP F. POLLARINE,
Appellant

v.

DAVID BOYER, DETECTIVE SERGEANT;
THE EAST NORRITON TOWNSHIP POLICE DEPARTMENT
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 04-cv-05312)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2007

Before:  RENDELL, BARRY, and CHAGARES, Circuit Judges.

(Filed: April 18, 2007)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

The instant appeal arises out of a sad saga of parental discipline gone awry.  The

District Court granted summary judgment in favor of defendants, Detective Sgt. David

Boyer ("Sgt. Boyer") and the East Norriton Township Police Department ("Police

Department"), and we will affirm.

On November 16, 2002, appellant Phillip Pollarine ("Pollarine"), in the course of a dispute, struck his 15-year-old son Nicholas in the face, causing a visible red mark. Nicholas called 911 and told the operator that his father was "trying to kill him." Appx. at 193. Pollarine, who was then in the upstairs bathroom, picked up another telephone extension and told the 911 operator that she should not be concerned because his son had mental issues. Appx. at 190. When told by the operator that she had already dispatched a car, Pollarine stated, "I understand. . . . I'll talk to them when they get here, I guess," and hung up the phone. Appx. at 195, 199.

The officers arrived, were admitted by Nicholas into the home, and, after several minutes in the residence, came upstairs. Pollarine, who was still in the bathroom, refused to come out, prompting the officers to kick open the locked bathroom door. After the officers agreed to give Pollarine a moment to collect himself, Pollarine left the bathroom, entered the bedroom where the officers were located, and began questioning the officers as to why they wanted to arrest him, telling Sgt. Boyer and the other three officers present, "I don't want to be arrested, but I want to know, if I'm coming with you, what the charges are because I'm not leaving voluntarily, you know, so tell me, you know." Appx. at 218. One of the officers, seeing that Pollarine was not fully dressed, threw a pair of pajama pants to Pollarine, who indicated, "I'm not going to go." Appx. at 220.

Thereafter, the officers, though not Sgt. Boyer, seized Pollarine, threw him onto a bed and attempted to free Pollarine's hands so that they could handcuff him. Pollarine

2

resisted the officers' efforts to handcuff him, and Sgt. Boyer eventually threatened to use pepper spray in order to obtain Pollarine's compliance. Boyer's threat apparently yielded the desired results, as Pollarine ceased resisting arrest and was handcuffed by the other officers. Appx. at 222-30.

Pollarine testified that his son was downstairs and that, as he and the officers left the residence, his son was "putting on a show, crying and, you know, that whole bit . . . . He was very believable." Appx. at 238-39. Pollarine was taken to the police station and processed. He was then taken to the courthouse, where Montgomery County District Justice Michael Richman set his bail, instructing him to "stay away [from the residence] for 24 hours to 48 hours," after which time he could return. Appx. at 259. District Justice Richman told Pollarine to "have your wife call me." Appx. at 260. Pollarine's wife did call later, but did not speak to District Justice Richman about Pollarine's return to the residence. Appx. at 266.

Five days later, on November 21, 2002, Pollarine was brought before Montgomery County District Justice Ester Casillo. Pollarine had phoned her after receiving a telephone call from Sgt. Boyer concerning his bail conditions. District Justice Casillo was visibly angry with Pollarine – although she did not explicitly state why. Pollarine surmised it was because he had violated his release conditions by returning to his residence and because he had called District Justice Casillo after Sgt. Boyer contacted him. District Justice Casillo charged Pollarine with disorderly conduct, and Pollarine pled guilty to that charge and paid the fine.

3

Pollarine sued Sgt. Boyer and the East Norriton Township Police Department under 42 U.S.C. § 1983, asserting federal and state law claims. In his complaint, Pollarine alleged conduct on the part of Sgt. Boyer, "and certain other unknown and unidentified officers employed by and acting for and on behalf of the Police." Appx. at 39. Pollarine averred that the individual defendant (namely, only Sgt. Boyer) and the Police Department deprived him of his constitutional rights, specifically alleging: invasion of privacy, assault and battery, use of excessive force, false arrest, illegal detention, arrest without probable cause, arrest and detention without due process of law, false imprisonment, and reckless disregard of his medical condition. Pollarine further alleged that the Police Department failed to control, train, discipline, or supervise its officers. Finally, Pollarine asserted state claims of false imprisonment, false arrest, malicious prosecution, and assault and battery.

Defendants moved for summary judgment, which was granted by District Court in a 23-page Memorandum and Order. Evidence produced during the discovery phase, which formed the basis for the District Court's ruling, consisted almost entirely of Pollarine's own deposition.

With respect to Pollarine's claim of excessive force and arrest without probable cause, the District Court noted that, according to Pollarine's own testimony, he was resisting arrest. Pollarine's son had indicated that his father was hitting him and was threatening to kill him, and he appeared believable to the responding officers. According to Pollarine, his son had "bruises and stuff all over him" as well as numerous scratches.

4

Appx. at 196-97. The conduct attributed specifically to Sgt. Boyer was his threatened use of pepper spray. However, the District Court concluded that "[t]he threat to use pepper spray on a person who is actively resisting arrest does not constitute the use of excessive force." Appx. at 15.

With respect to the issue of probable cause, the District Court determined that the arrest and detention of Pollarine were perfectly proper:

> In this case, Boyer and his fellow officers were responding to a 911 call from Plaintiff's son in which the son indicated that Plaintiff was trying to kill him. Plaintiff concedes that he did in fact hit his son and that it left a visible mark on Nicholas's face. When Boyer arrived at Plaintiff's home in response to the call, Nicholas met him at the door. Nicholas was crying, and there were visible signs of injury on his body. Boyer certainly had probable cause to believe that Nicholas was the victim of domestic violence at the hands of his father.

Appx. at 17.

With respect to the claim of invasion of privacy, the District Court noted that the officers were invited into the house by Nicholas, who met them at the door. Believing that Pollarine had assaulted his son, the officers, under Pennsylvania domestic violence statutes, did not need a warrant to make the arrest, and therefore there was no invasion of privacy.

With respect to the claim for "reckless disregard of medical condition," the District Court properly treated this claim as one for violation of substantive due process. The claim arose out of the fact that Pollarine was 5'11" tall, weighed 365 pounds, and had chronic back problems, which were purportedly exacerbated by the incident on

5

November 16, 2002. The District Court, referring to Pollarine's own testimony, concluded that there was nothing to indicate at the time of arrest that Pollarine was in a condition that required a doctor's attention. Pollarine himself testified that he was handcuffed within a few minutes, walked down the stairs with the officers' assistance, and stood outside for approximately 20 minutes waiting for a van to arrive, since the normal police vehicle was not large enough to transport Pollarine. In fact, the police honored his request to tell him when the vehicle was turning on the way to the police station so that he would not hurt his back during the ride. Thus, the District Court determined that there was no substantive due process violation.

The District Court also held that even if there were a claim of constitutional violation that could withstand scrutiny, Sgt. Boyer would be entitled to qualified immunity based upon the facts as recounted by Pollarine.

With respect to the allegations against the Police Department, the District Court concluded that Pollarine had shown no underlying constitutional violation, and that, even if he had, there was no evidence of a policy or custom that would proximately have caused such a violation.

Finally, the District Court determined that Pollarine adduced no evidence in support of his argument that Sgt. Boyer or any other police officer was using excessive force or participating in an unlawful arrest and no evidence that a lack of training caused

any violation of Pollarine's constitutional rights.[1]

On appeal, Pollarine levels three challenges to the District Court's order.[2]

### 1. Pollarine was acting in the course of his constitutionally protected duties as a parent, and the police lacked probable cause to arrest him.

We agree with the District Court that, according to Pollarine's own deposition testimony, the officers summoned to his residence observed his son in obvious distress as a result of a domestic argument. Pollarine avers a constitutionally-protected liberty interest in the care, custody, and management of his children, citing to *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). Pollarine fails to indicate, however, how police officers, confronted with a situation such as this, with Pollarine's son appearing credible, bruised and having indicated that his father tried to kill him, should assume that the right to parental care and custody should somehow trump their duties, such that they should not protect a child in this situation. We must respectfully disagree with Pollarine's contention that he was "privileged by statute to discipline his son" in such a way as to somehow negate the probable cause for arrest that apparently existed. Brief for Appellant at 14.

While Pollarine contends that the District Court used his deposition to make findings contrary to what he stated, we conclude that his own testimony supported

---

[1] The District Court also dismissed the state law claims as not supported by the evidence in light of the probable cause to arrest as well as Pollarine's guilty plea to the charge of disorderly conduct.

[2] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review the District Court's denial of summary judgment *de novo*. *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

probable cause for his arrest by Sgt. Boyer. Notably, Pollarine did not sue the "other officers" who engaged in physical restraint of Pollarine; clearly, his testimony was that Sgt. Boyer played no role in that aspect of his apprehension.

**2.  The District Court ignored the six days of false imprisonment when Mr. Pollarine's bail was revoked based on Sgt. Boyer's assertion of a nonexistent condition of bail.**

Pollarine's deposition testimony regarding the events of November 21, 2002, was convoluted and conclusory. It appears that Sgt. Boyer did contact Pollarine to give him a "heads-up" that he was coming to pick him up and take him to District Justice Casillo, which did indeed happen. Apparently, District Justice Casillo was "so angry," according to Pollarine, that she said:

> [T]he matter is in my court now. I'll decide as far as where this goes. You violated your bail, you know, and the officers told me that that's the reason he's over to see you in the first place because he noticed your car at your house, so you're going to go with the officer to, you know, Montgomery County Correctional Facility, until the day of the trial.

Appx. at 277.

The District Court did not specifically analyze the false arrest and false imprisonment claims made by Pollarine, but based its dismissal of these claims on the existence of probable cause to arrest and imprison that the court had found in connection with the federal claims, as well as the entry by Pollarine of a guilty plea to disorderly conduct in connection with the events of November 21, 2002, a disposition not favorable to the plaintiff.

8

The imprisonment in the Montgomery County Correctional Facility was ordered by District Justice Casillo, not by the defendants. Moreover, to the extent that Pollarine complains about his treatment in the Montgomery County Correctional Facility, these claims must fail because the Montgomery County Correctional Facility was not made a defendant in the case.

### 3. Pollarine's deposition established substantial material issues of fact that are in dispute.

Pollarine makes the claim that his deposition creates material issues of fact. This is an unusual claim indeed. Given our standard on summary judgment, namely, that we view all facts in the light most favorable to the non-moving party (here, Pollarine), we rely upon his facts, and view them in the best possible light. Moreover, there are no facts presented by way of sworn affidavit or deposition on behalf of the defendants. Accordingly, we have looked solely to Pollarine's deposition, and we find it lacking in the factual support needed for his claim.[3]

Pollarine makes several other claims, which we need not address because they amount to a restatement of the claims we have addressed above.[4]

---

[3] Pollarine contends that the District Court relied upon an undated affidavit of probable cause. We disagree. The District Court relied almost exclusively on Pollarine's own deposition.

[4] Pollarine also claims that the defendants were not entitled to qualified immunity; that the Police Department had supervisory liability for the actions of Sgt. Boyer; that the Police Department was aware of its duty to accommodate disabled arrestees but provided no procedures in its manual to direct its officers; and that the Police Department was aware of Sgt. Boyer's admitted overreactions when he felt his authority was challenged,

Accordingly, the order of the District Court granting summary judgment in favor of defendants will be AFFIRMED.

---

yet continued to promote him.  There is no reason to discuss these claims, as there is no evidence that would render them relevant to the District Court's ruling or the appeal before us.